IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BRIONEZ, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF<br>AGRICULTURE, et al.,<br><br>    Defendants.<br>_____/ | No. C 01-3969 CW<br><br>ORDER DENYING<br>PLAINTIFFS'<br>MOTION FOR<br>ENFORCEMENT OF<br>COURT-APPROVED<br>SETTLEMENT |

Plaintiffs move for enforcement of the Hispanic Settlement Agreement (HSA or Agreement) and request that the Court extend the Agreement, scheduled to expire on February 14, 2007, an additional two years. Defendants oppose the motion, arguing that there is no basis for a two-year extension. This matter was heard on January 12, 2007. Having considered the parties' papers, the evidence cited therein, the Monitor's October, 2006 Report and oral argument, the Court denies Plaintiffs' motion for enforcement of the Agreement.

BACKGROUND

This is the second time that Plaintiffs have appeared before this Court arguing that Defendants are not in substantial compliance with the Agreement and requesting relief.

Previously, the Court ruled that Defendants failed to discharge their obligations under the Agreement and granted in part and denied in part Plaintiffs' motion for contempt and for enforcement of the Agreement. See March 30, 2006 Order. The Court concluded that, although Defendants were not in contempt, they were not in substantial compliance with Sections IV.B through IV.G and Section V as a whole and were in breach of Sections IV.A,[1] IV.C. and IV.D. Hispanics continued to be under-represented in the workforce of the Pacific Southwest Region of the Forest Service of the United States Department of Agriculture (Region 5), as compared to applicable Civilian Labor Force (CLF) statistics. The Court ordered the Agreement extended one year and ordered Defendants to comply with seven remedial measures designed to increase the representation of Hispanics. These additional measures required, in part, that Defendants contract with an effective outside recruiter, continue their fire apprentice mentoring program and expand the activities of the Central California Consortium to at least two additional locations.

In a later order, concerning reporting and enforcement procedures, the Court ordered Defendants to provide to the Court, Plaintiffs and the Monitor semi-annual reports. See May 15, 2006 Order. That same order required the Monitor to provide to the

---

[1] According to Section IV.A, "It is the intention of Defendants to undertake and continue specific measures designed to eliminate barriers to hiring, promotion, and retention of Hispanics in the Region 5 workforce"; it is Defendants' goal to increase Hispanic representation in the Region 5 workforce to a percentage equivalent to the percentage of Hispanics in the applicable labor pool in the relevant geographic area.

Court and the parties a report on Defendants' progress in compliance with the Agreement and the additional remedial measures required by the Court's order.

In her report to the Court, the Monitor found that, after the Court issued its March 30, 2006 order, Defendants, also referred to as the Region, have taken more seriously their obligations under the Agreement and have moved more expeditiously in their compliance than during the prior three years of the Agreement: "The Region has taken steps to comply with the additional remedial measures ordered by the Court, and has now complied with many of the requirements of the HSA."  October 9, 2006 Monitor's Report, p.1.  Nonetheless, the Monitor concluded that Defendants remain out of compliance with the HSA provisions in several areas: "Most significantly, the Region has made little progress in compliance with the HSA § IV.A goal of increased Hispanic representation in the Region 5 workforce.  The Region has also failed to comply substantially with its monitoring obligations under §§ V.A.2 and V.A.3, and delayed its compliance with the Court's remedial measure of having an effective mentoring program in place."  Id.[2]  The Monitor recognized that, while the Region has in place the Court's remedial measures, these measures will require time in order to produce results.  She noted the

---

[2] Defendants argue that the Monitor's Report is not evidence and thus should not be considered by the Court in determining whether Defendants are in compliance with the HSA and the remedial measures prescribed by the Court.  When opposing Plaintiffs' first motion for enforcement, Defendants similarly argued that the Monitor's previous report was not properly before the Court, an argument the Court rejected.  The Court again finds the Monitor's report useful and wishes to consider it.  The Court will consider the parties' positions, as well as the Monitor's report, in reaching its own findings and conclusions.

1  enormous resources Defendants have expended under the HSA, but with
2  limited success in increasing Hispanic employment levels.  The
3  Monitor recommended that, given the minimal progress that
4  Defendants have made over the past years, the Region should
5  voluntarily agree to modify the HSA to continue the Agreement.  She
6  stated, "An extension, under Court supervision, with time to
7  institutionalize measures under the new Human Resources structure,
8  will help ensure that the Region sees results from the resources
9  expended."  Id. at 30.

10  Defendants have not followed the Monitor's recommendation;
11  they will not voluntarily continue the Agreement.  But they state
12  that they will voluntarily continue programs of the HSA and the
13  Court's additional measures that they believe have been effective.
14  For example, the Region plans to continue its mentoring program,
15  including funding the position of a Mentoring Program Manager, and
16  also plans to continue to have an effective outreach and
17  recruitment program and has extended its contract with an outside
18  recruiter for an additional year.  Although Defendants list twelve
19  actions that they plan to continue voluntarily, they note that they
20  are not obliged to continue to implement any provision of the HSA
21  or the Court-ordered additional measures.

22  The HSA is scheduled to expire on February 14, 2007.

## LEGAL STANDARD

This Court has the inherent power summarily to enforce a
settlement agreement involving an action pending before it.  In re
Suchy, 786 F.2d 900, 902-03 (9th Cir. 1985).  The interpretation
and enforcement of a settlement agreement is governed by the legal

4

principles applicable to contracts. <u>United Commercial Ins. Serv., Inc. v. Paymaster Corp.</u>, 962 F.2d 853, 856 (9th Cir. 1992).

## DISCUSSION

Plaintiffs concede that Defendants have made progress since the Court found that Defendants were in breach of provisions of the HSA and ordered Defendants to undertake additional remedial measures. But they contend that Defendants continue to fall short of their obligations under both the HSA and the Court's order. Specifically, Plaintiffs argue that Defendants have failed to make adequate progress toward the goals of section IV.A.1 and have not substantially complied with sections V.A.1, V.A.2, V.A.3, V.B.2 and the Court's remedial order on the apprentice mentoring program and, therefore, they ask the Court to extend the HSA an additional two years.

Many of Plaintiffs' arguments concerning compliance are well-taken, in particular Plaintiffs' argument that Defendants have not made sufficient progress toward the goals of section IV.A.1. The percentage of Hispanics Region 5 employs continues to be small: in 2002, 8.9% of Region 5 employees were Hispanic; four years later, eleven percent of Region 5 employees were Hispanic.

To determine whether Defendants are in compliance with the goals set in Section IV.A, however, the parties focus on the GS-462 series position, Forestry Technician, discussed in the Court's prior order. According to Defendants' most recent report to the Court, as of November 4, 2006, 13.2% of the employees in the GS-462 series were Hispanic. The Court previously found, relying on Plaintiffs' expert, that the correct percentage of Hispanics in the

5

CLF was 31.5%. Defendants' expert states that this percentage was miscalculated. Plaintiffs' expert now states that, adjusting for citizenship and English proficiency, as the Court did in the prior order, the correct percentage of Hispanics in the CLF is 18.4%. Defendants' expert argues that the correct percentage is much lower: 11.9%. Under Defendants' expert's calculation, Defendants would have reached parity in the GS-462 series, achieving the goal of Section IV.A. Defendants' proposed CLF percentage, however, is not correct.

Although the Court, as noted above, permitted an adjustment for citizenship and English proficiency, Defendants' expert includes adjustments for education and experience and geography. He divides the GS-462 series into two separate groups, with separate CLF goals: one group consists of grade six and below; the other group consists of grade seven and above. These are new adjustments to the CLF percentage that the parties did not agree would be considered. And Defendants fail to convince the Court that these adjustments are necessary, or correct. The Court finds that Defendants have fallen short of achieving the goals of Section IV.A.

The HSA, however, provides that, even if Defendants fail to meet the goals of Section IV.A, they are not in breach of the Agreement, and the Court cannot order relief, if they demonstrate substantial compliance with Sections IV.B through IV.G and V. Defendants contend that they are in substantial compliance with the Agreement. This contention is based largely on Defendants' last minute efforts in the few remaining months of the one-year

6

extension. Plaintiffs respond that last minute compliance is not substantial compliance, noting that as a whole, Defendants have not been in substantial compliance during the term of the Agreement. However, even if Defendants were not in substantial compliance, there is little, if anything, for this Court to do.

Plaintiffs ask the Court to extend the HSA for two more years. They argue that the Court has authority under the Agreement to do so, pointing to the language stating that the Court can order "additional remedial measures." The Court rejected that argument in its prior order. The Agreement provides for a "a one-time, one-year extension of the Term of the Agreement." The Court has ordered a one-year extension and, under the Agreement, cannot extend the Agreement any additional length of time.

Plaintiffs argue that, if the Court does not have authority pursuant to the Agreement, the Court has inherent authority to enforce the Agreement. That is true. See, e.g., Spallone v. United States, 493 U.S. 265, 276 (1990) (courts have inherent power to enforce compliance with their consent decrees). But Plaintiffs' argument that the Court's inherent authority to enforce the Agreement includes the power to extend the Agreement is not supported by the out-of-circuit cases Plaintiffs cite. The agreement at issue in United States v. Local 359, 55 F.3d 64, 69 (2d Cir. 1995), expressly authorized the court to extend the Administrator's term, and thus the agreement, "as it sees fit." The Third Circuit, in Holland v. New Jersey Department of Corrections, 246 F.3d 267, 270-71 (3d Cir. 2001), found a court's broad remedial power can be used to extend the effective time

7

period of a consent decree when enforcing compliance with a decree aimed at remedying past discrimination.  Although Plaintiffs alleged discrimination, they have not attempted to prove past discrimination, and Defendants state that there has been no past discrimination.  See March 30, 2006 Order, p. 34-35.

Here, the Court's authority is limited to enforcing the Agreement, and the Agreement, as discussed above and in the Court's prior order, does not allow an additional two-year extension.  See San Francisco NAACP v. San Francisco Unified Sch. Dist., 896 F.2d 412, 413 (9th Cir. 1990) (noting that the scope of a consent degree must be discerned within the agreement's four corners, and not by reference to what might satisfy the purpose of one of the parties).  Therefore, to order a two-year extension, the Court would have to modify the Agreement.

The Court explained in its prior order that, for the Court to modify this Agreement, Plaintiffs must first establish a significant change, in either factual conditions or in the law, requiring modification.  Then, the Court must determine whether the requested modification is "suitably tailored" to resolve the issues created by the changed circumstances.  See, e.g., Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367 (1992); Keith v. Volpe, 784 F.2d 1457, 1460 (9th Cir. 1986).

Relying on Holland, however, Plaintiffs argue that the Court should apply a "somewhat more relaxed standard" than the standard provided in Rufo, which requires that a change in factual conditions usually must "make compliance with the decree substantially more onerous."  See Rufo, 502 U.S. at 384-85.  In

8

1  Holland, the court noted that Rufo "set the standard for cases in
2  which the defendant seeks to have a decree modified, while in the
3  case at bar it is the plaintiffs seeking modification."  246 F.3d
4  at 284, n.16.  The Third Circuit held that, when the plaintiff is
5  seeking to modify the consent degree, the district court may modify
6  the decree upon making a finding that conditions have changed so
7  that the basic purpose of the decree has been thwarted.  Id. at
8  283.  Plaintiffs concede, however, that this relaxed standard has
9  not been adopted by the Ninth Circuit and that the Ninth Circuit
10 has applied the Rufo standard to a plaintiff's proposed
11 modification of a consent decree.  See, e.g., Hook v. Arizona, 120
12 F.3d 921, 925 (9th Cir. 1997).  Because the Court must follow Ninth
13 Circuit law, the Court finds that the Rufo standard applies to
14 Plaintiffs' modification request.
15    Plaintiffs contend that, since the Court's prior order,
16 Defendants have significantly changed their hiring processes and
17 instituted new and completely unproven systems.  Although they take
18 no position as to whether the changes will be efficacious, they
19 argue that these changes warrant the Court to modify the HSA,
20 extending it two additional years.  But Plaintiffs fail to show
21 that Defendants' changes in their hiring processes are a
22 significant change in circumstances that makes compliance with the
23 Agreement "substantially more onerous."  Rufo, 502 U.S. at 384.
24 Nor do Plaintiffs point to any significant changes that make the
25 Agreement itself unworkable.  Id.  As the Monitor noted, the many
26 changes in Defendants' Human Resources processes "raise serious
27 concerns about whether any hiring processes will be

9

institutionalized in Region 5 that will continue progress toward the § IV.A goal after the end of the HSA." Monitor's Report, p.38. However, because Plaintiffs do not meet their burden under Rufo, the Court cannot modify the Agreement and extend it another two years.

It is unfortunate that the goals of the Agreement were not achieved. The Court notes that this failure is due, not to a lack of resources, but rather to late compliance. Defendants represent that they will continue to diversify their workforce, even after the Agreement has expired. Although restrained under the Agreement from extending its jurisdiction and the Agreement, the Court hopes that Defendants do continue to diversify their workforce and that the goals of the Agreement will be achieved in the future.

CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motion for Enforcement of Court-Approved Settlement (Docket No. 154).[3] The Agreement shall expire on February 14, 2007.

IT IS SO ORDERED.

Dated: 1/26/07

CLAUDIA WILKEN
United States District Judge

---

[3] The Court also DENIES Defendants' Administrative Motion for Leave to File Rebuttal Declaration (Docket No. 169).

10